<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

October 29, 2020

Rahul Sharma, Esq.
Office of the Federal Public Defender
1002 Broad Street
Newark, NJ 07302
*Counsel for Defendant Kay Ellison*

Daniel S. Kahn, Esq.
Cory E. Jacobs, Esq.
Michael T. O'Neill, Esq.
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
*Counsel for the United States of America*

<u>**LETTER OPINION FILED WITH THE CLERK OF THE COURT**</u>

**Re:**   *United States v. Judy Tull & Kay Ellison*
**Criminal Action No. 15-622 (SDW)**

Counsel:

Before this Court is Defendant Kay Ellison's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motion.[1]

<u>**DISCUSSION**</u>

A.

Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010), the recently-enacted First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant

---

[1] Although the docket indicates that Defendant has filed multiple motions for her release, *see* D.E. 160, 161, 165, this Court treats those filings as one unified motion.

compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). As such, under the FSA, "a defendant seeking a reduction in [their] term of imprisonment bears the burden of establishing both that [they have] satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[2] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted).

B.

On March 28, 2018, Defendant was convicted of eight counts of wire fraud, mail fraud, and conspiracy in violation 18 U.S.C. §§ 2, 1349, 1343, and 1344, and, on November 28, 2018, was sentenced to 94 months imprisonment, five years of supervised release, and $19,550,000.00 in restitution. (D.E 108, 139.) Defendant began serving her sentence at Federal Prison Complex Alderson ("FPC Alderson") in West Virginia on January 2, 2019. (D.E. 145; 165 Ex. 1.)

Defendant requested compassionate release from the warden at FPC Alderson on April 8, 2020. (D.E. 161 Ex. 4.) Defendant's request, filed on her behalf by her daughter, asked that she be transferred to home confinement. (*Id.*) The request was denied on April 27, 2020, in part because Defendant's "medical condition does not meet the criteria" necessary for compassionate release. (*Id.* at Ex. 5.) Defendant asked the Warden to reconsider his decision on May 15, 2020. (*Id.* Ex. 6.) On June 23, 2020, Defendant appeared *pro se* and moved this Court for compassionate release under the FSA, seeking a sentence reduction to time served. (D.E. 160 at 1, 40.) Following

---

[2] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

2

the appointment of counsel, Defendant supplemented her motion on September 14, 2020 and September 30, 2020, requesting compassionate release due to: 1) the spread of the COVID-19 virus in the federal prison system and the discovery of two infected inmates at FPC Alderson; and 2) Defendant's medical conditions which she contends place her at "an increased risk of contracting COVID-19 and developing a severe illness from the virus." (D.E. 165 at 6; D.E. 168.) In addition, Defendant also indicated that she was no longer seeking "a reduction of her sentence, and for the sake of her health, is willing to consent to incarceration in her home in North Carolina."[3] (D.E. 165 at 2.) The Government opposed on September 18, 2020, and Defendant timely replied. (D.E. 166, 167.)

C.

Defendant contends that her obesity, hypertension, and weakened immune system[4] make her more vulnerable to becoming seriously ill should she contract COVID-19. (D.E. 165 at 6-11; D.E. 167 at 1-6; D.E. 168 at 1.) According to the Centers for Disease Control and Prevention ("CDC"), people with obesity are at an increased risk of severe illness from COVID-19 and people with hypertension and/or a weakened immune system might be at an increased risk of severe illness from COVID-19.[5] *See* CDC, *People with Certain Medical Conditions* (last updated Oct. 6, 2020), *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html*. Under these guidelines, obesity is defined as a body mass index ("BMI") of 30 or higher. *Id.*

This Court is sympathetic to Defendant's medical concerns regarding possible complications caused by COVID-19, but it will not grant her application because she has not established that "compelling and extraordinary reasons" justify her release. *See Epstein*, 2020 WL 1808616, at *2. Defendant's BMI is 30.3; thus, she is obese, but not severely so. (D.E. 165 at 6, Ex. 2; *see* CDC, *Defining Adult Obesity* (last reviewed Oct. 27, 2020), https://www.cdc.gov/obesity/adult/defining.html (defining "severe" obesity as a BMI of 40 or higher).[6] Furthermore, Defendant's hypertension is currently being treated with medication, and

---

[3] Although this Court does not have the authority to order such relief, it does have the authority to issue a recommendation to the Bureau of Prisons ("BOP"). *See* 18 U.S.C. § 3621(b)(4) (stating that the BOP may consider "any statement" by the sentencing court "recommending a type of penal or correctional facility"); *United States v. Ceballos*, 671 F.3d 852, 856 n.2 (9th Cir. 2011) (noting that "district courts [have] the authority to make (or not make) non-binding recommendations to the Bureau of Prisons at any time").

[4] Defendant suffers from Selective IgM Deficiency ("SIgM"), in which the body fails to produce sufficient levels of immunoglobins, and which may increase susceptibility to viral infections. *See* Nat'l Institutes of Health, *Selective IgM Deficiency,* (last visited Oct. 27, 2020), https://rarediseases.info.nih.gov/diseases/12547/selective-igm-deficiency; *see also* D.E. 161 at 43, Ex. 12 at 57).

[5] The most recent update to the CDC guidance does not mention SIgM specifically, but generally notes that a range of "conditions and treatments can cause a person to be immunocompromised or have a weakened immune system." CDC, *People with Certain Medical Conditions* (last updated Oct. 6, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[6] The Government questions whether Defendant is currently obese. Defendant's initial moving papers did not raise obesity as a risk factor and claimed that she had "recently lost a full third of her body weight." (D.E. 160 at 3 ¶ 3; *see also* D.E. 161 Ex. 12 at 62 (reporting that on July 21, 2011, Defendant's weight was 224 pounds); D.E. 165 Ex. 3 at

BOP staff indicate that her condition is "well controlled." (D.E. 165 Ex. 3 at 1; 167 Ex. 1-3 (reporting increases in Defendant's daily dose of Lisinopril from 10 to 40 mg and ordering routine blood pressure checks).)

Multiple decisions in this District have denied compassionate release to inmates suffering from obesity, hypertension, and/or other health issues, despite the risk of COVID-19. *See, e.g.*, *United States v. Gore*, Crim. No. 10-250, 2020 WL 3962269, at *3–5 (D.N.J. July 13, 2020) (finding that defendant's obesity, asthma, and other factors did not constitute "extraordinary and compelling reasons that would justify his compassionate release," where the facility was providing adequate care); *United States v. Wax*, Crim. No. 14-251, 2020 WL 3468219, at *3 (D.N.J. June 25, 2020) (denying defendant's motion for compassionate release for lack of an extraordinary and compelling reason, even though he suffered from hypertension and obesity, with a BMI of 36, because he was receiving "regular and consistent medical care"); *United States v. Falci*, Crim. No. 17-228, 2020 WL 3410914, at *1, *4 (D.N.J. June 22, 2020) (denying motion for compassionate release where defendant was 60 years old and suffered from obesity, hypertension, and other health issues); *United States v. Bleicher*, Crim. No. 19-99, 2020 WL 2744606, at *3 (D.N.J. May 27, 2020) (denying compassionate release for a defendant with a BMI of 37.7); *United States v. Alexander*, Crim. No. 19-32, 2020 WL 2507778, at *4 (D.N.J. May 15, 2020) (denying compassionate release where defendant suffered from hypertension and obesity but medical records showed that Bureau of Prisons was "adequately managing [his] medical care").[7]

Even if this Court were to find that Defendant's health conditions constituted an extraordinary and compelling reason for release, it would still deny her motions because the applicable sentencing factors under 18 U.S.C. § 3553(a) weigh against her early release. *See Sparrow*, 2020 WL 4364328, at *3 (concluding that, while obesity constituted an "extraordinary and compelling" reason for release, the sentencing factors weighed against compassionate release); *see also United States v. Tiller*, Crim. No. 14-699-06, 2020 WL 5759744, at *3-4 (D.N.J. Sept. 28, 2020 (same). If released now, Defendant will have served less than one-fourth of her 94-month sentence for crimes that involved the fraudulent misuse of over $19,000,000.00. Such a sentence would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." *See* 18 U.S.C. §§ 3553(a)(2)(A); *see also* D.E. 142 at 49-50

---

1 (indicating that on March 24, 2020, Defendant's weight was 202.4 pounds.) Only in her supplemental papers did Defendant argue that she is obese, but in so doing, she relies on medical records from March 2020. (*See* D.E. 165, Ex. 3 at 1.) Defendant was examined by BOP medical personnel in August and September of 2020, but those records do not reference her weight. (*See* D.E. 167 Ex. 1-3.) For the purposes of this motion, this Court accepts Defendant's weight of 202.4 pounds as recorded on March 24, 2020.

[7] This Court also takes into consideration that two inmates at FPC Alderson have tested positive for COVID-19. (D.E. 168.) With a total population of 757 inmates, (*see* D.E. 161 Ex. 13), FPC Alderson's positivity rate is approximately .0026%, which is well under the current rate in West Virginia (4.0%), where FPC Alderson is located, and North Carolina (6.5%), where Defendant wishes to reside in home confinement. *See Tracking Our COVID-19 Response,* https://www.covidexitstrategy.org (last updated Oct. 26, 2020) (providing positivity rates for all states and reporting that both West Virginia and North Carolina currently have increasing rates and "uncontrolled spread" of COVID-19). Having reviewed the safety protocols and procedures instituted by the Bureau of Prisons, (*see* Bureau of Prisons, (last visited Oct. 28, 2020), *https://www.bop.gov/coronavirus/)*, this Court finds that Defendant's risk of serious illness or death is not substantially higher simply because she is in custody at FPC Alderson.

(discussing factors considered in imposing Defendant's sentence).  It would also create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6); *see Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing"); D.E. 142 (noting the importance of avoiding "unwarranted sentencing disparities"); D.E. 148 (sentencing Defendant's co-defendant Judy Tull to 94 months imprisonment for the same crimes).

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Compassionate Release is **DENIED**.  Should a change in circumstances so require, Defendant may renew her motion.  An appropriate order follows.

            ___/s/ Susan D. Wigenton_____
            **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc:  Parties